IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAL MOTORS LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>    Defendants. | Case No. 23-cv-02877 |

**COMPLAINT**

Plaintiff General Motors LLC (hereinafter, "GM" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, the "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois,

accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of GM's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused GM substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by GM to combat e-commerce store operators who trade upon GM's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including automotive accessories, key chains, apparel, and home decor products using infringing and counterfeit versions of GM's federally registered trademarks (the "Counterfeit GM Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit GM Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. GM is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit GM Products over the Internet. GM has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff General Motors LLC is a limited liability company of the State of Delaware, having its principal place of business at 300 Renaissance Center, Detroit, Michigan 48265-3000.

5. GM, one of the most preeminent automotive brands in the world, was founded in 1908 as a separate and successor company to the already famous Durant-Dort Carriage Company, which had been the largest manufacturer of horse drawn vehicles prior to the explosion of automobiles. From its founding in 1908 to present day, GM has remained at the forefront of the automotive industry. For more than 75 years, GM has been one of the largest producers of automotive vehicles in the world, with more than 7 million vehicles sold to consumers yearly, resulting in more than 130 billion dollars in revenue.

6. Propelled by its reputation and recognizable trademarks, which are carefully curated and monitored, consumers recognize GM and its GM brand as a source of reliable and quality vehicles, vehicle parts and accessories, miniature vehicles and toys, and various other lifestyle products (collectively, the "GM Products"). GM has registered many of its trademarks with the United States Patent and Trademark Office. GM Products typically include at least one of GM's registered trademarks. GM uses its trademarks in connection with the marketing of its GM Products, including the following marks which are collectively referred to as the "GM Trademarks."

| Registration No. | Trademark | Class | Goods and Services |
|---|---|---|---|
| 1,223,115 | GENERAL MOTORS | 006, 007, | Automobiles, truck and bus parts-namely, locks and keys. |

| | | | |
|---|---|---|---|
| | | 009, 012, 017 | Automobile, truck and bus parts-namely, crankshafts, crankshaft bearings, pistons, piston rings, connecting rods, connecting rod bearings, carburetors and distributors, camshafts and camshaft bearings and generators.<br><br>Automobile, truck and bus parts-namely, electric thermostats, tachometers, fuel and temperature gauges, voltmeters, speedometers.<br><br>Automobile, truck and bus parts-namely, internal combustion engines and parts thereof-namely, cylinder blocks, cylinder heads, manifolds, valves, valve lifters, water pumps, fuel pumps, oil pumps, starter motors, flywheels, air cleaners, oil filters, radiators, fans, fuel tanks, exhaust pipes, mufflers, catalytic converters, bumpers, grilles, hoods, fenders, manual and power steering units, steering wheels and columns, shock absorbers, springs, tie rods, ball joints, manual and power brakes, brake pumps, brake shoes, brake drums, brake linings, manual and automatic transmissions, clutches, drive axles, instrument panels, seat belts, windshield wipers and blades, windshield washers.<br><br>Automobile, truck and bus parts-namely, non-metallic gaskets, accessory drive belts and hoses. |
| 1,034,749 | GM | 011 | Electric lamps and lenses and reflectors thereof for automotive vehicles. |
| 861,602 | GM | 012 | Automobiles, motor trucks, truck tractors, buses, and parts thereof. |
| 4,564,281 | GM FINANCIAL | 036 | Motor vehicle financing services. |

| 2,182,741 | GM MOTOR CLUB | 037 | Emergency motor vehicle road side services. |
|---|---|---|---|
| 1,764,883 | GM PROTECTION PLAN | 036, 037 | Providing extended warranty contracts for motor vehicles.<br><br>Automobile maintenance and repair services. |
| 2,082,242 | GM SAFE DRIVING PROGRAM | 041 | Educational services, namely conducting classes, seminars, workshops and conferences to educate people with the basic requirements of operating a vehicle and to develop safe driving skills. |
| 5,640,589 | ACTIVE TOW | 009 | Computer software and hardware comprising video display panels, video cameras, and electronic controllers incorporated in motor land vehicles, for managing the attachment of the vehicles to trailers, and for automatically adjusting the transmission and brake systems of the vehicles and trailers. |
| 2,476,452 | AUTORIDE | 012 | Suspension system for motor land vehicles and structural parts thereof. |
| 5,138,021 | COOL SHIELD | 002 | Corrosion-inhibiting coating sold as a component ingredient of brake rotors for land vehicles. |
| 5,246,876 | DARE GREATLY | 012 | Motor land vehicles, namely, automobiles, sport utility vehicles, trucks, vans, engines therefor and structural parts thereof. |
| 5,251,612 | DARE GREATLY | 035 | Promoting the marketing of motor vehicles and motor vehicle repair services; retail sales of motor vehicles and parts and accessories of motor vehicles; providing consumer information about automobiles for sale or lease by means of printed material, audio and video recordings, television and radio advertising, on-line advertising, internet web sites and promotional contests. |
| 1,633,965 | DURAGUARD | 012 | Oil filters for automotive engines. |
| 4,552,244 | DURALIFE | 012 | Brake rotors for motor land passenger vehicles. |
| 2,804,683 | DURAMAX | 012 | Diesel engines for motor vehicles. |
| 5,367,502 | DURAMAX | 020 | Non-metal novelty license plates. |

5

| | | | |
|---|---|---|---|
| 6,775,114 | DURAMAX | 025 | Hats. |
| 4,661,148 | GEARON | 012 | Truck bed cargo system comprised of tiered storage cross rails, utility rack stanchions, cargo dividers and cargo tie down rings. |
| 1,342,435 | GUIDE | 011 | Electric lamps for automobiles, trucks tractors and buses. |
| 6,439,852 | GUIDEX | 011 | Lenses for vehicle lights. |
| 2,958,367 | INTELLIBEAM | 009 | Electronic system comprised of hardware and software for automatically controlling vehicle head lamps. |
| 2,635,493 | MIDGATE | 012 | Retractable panel incorporated as an integral part of a land motor vehicle, allowing configuration of cargo space and passenger space. |
| 2,849,726 | MULTI-FLEX | 012 | Seats for motor land vehicles. |
| 4,618,094 | REGEN ON DEMAND | 012 | Energy storage system comprising software, switches, steering wheel paddles, battery, electric drive motors, body control module, transmission control module, engine control module and hybrid control processor incorporated into a motor vehicle, and sold as an integral component therewith, which converts vehicle momentum energy into electricity and stores the electricity in a high voltage propulsion battery for later use. |
| 2,670,424 | SELECTIVE RIDE | 012 | Suspension components for motor land vehicles namely, shock absorbers, struts, springs, torsion bars, mountings and brackets. |
| 3,280,936 | SKYSCAPE | 012 | Motor vehicle sunroofs sold an integral part of a motor land vehicle. |
| 5,387,518 | SUPER CRUISE | 009 | Computer software, cameras, ultrasonic sensors, global positioning system and radar object detectors for the semi-autonomous driving of motor vehicles. |
| 6,564,929 | SUPER CRUISE | 009 | Electronic speed and steering control system for facilitating the semiautonomous driving of a motor land vehicle, sold as an integral part thereof. |
| 3,958,114 | SUPERMATIC | 012 | Transmissions for land vehicles. |
| 2,016,386 | TECH 2 | 009 | Hand held vehicle diagnostic computer. |

6

| | | | |
|---|---|---|---|
| 4,572,442 | TECH 2 | 009 | Motor vehicle diagnostic computers and parts thereof including memory cards; plug in electronic device for vehicle diagnostic testing; electronic data recorders for use with motor vehicle computer systems; computers, computer monitors, printers, modems, computer programs for reading, diagnosing and analyzing vehicle parts and vehicle system operations; vehicle based electronic modules for transmitting diagnostic information and vehicle operational status; electronic device to read engine emissions; software for motor vehicle diagnostic apparatus. |
| 1,818,566 | THE GM CARD | 036 | Credit card services which promote the sale of motor vehicles by crediting a portion of credit card usage towards the vehicle purchase price. |
| 4,275,879 | TTYPE | 012 | Trunk lining kits for motor land vehicles. |
| 4,275,880 | TTYPE | 027 | Floor mats for motor land vehicles. |
| 5,151,745 | TUSCAN | 012 | Option package for a motor vehicle comprising 20-inch 10-spoke two-toned painted wheels, bronze mesh grill and premium exterior paint sold as a unit as a feature of an automobile. |
| 2,814,188 | ULTRAVIEW | 012 | Sunroofs sold as an integral part of a motor land passenger vehicle. |
| 1,874,614 | ULTRAGUARD | 012 | Oil filters for land motor vehicles. |
| 6,702,604 | ULTRAVISION | 009 | On-board vehicular safety system comprised of video cameras for improving driver visibility. |
| 3,252,846 | VORTEC | 012 | Engines for land vehicles. |
| 283,227 | GM | 009 | Radio receiving sets and parts thereof. |
| 271,167 | GM | 009 | Radio receiving sets and parts thereof. |

| | | | |
|---|---|---|---|
| 314,824 | GM | 012 | Repair and replacement parts of motor driven vehicles-namely, brake drums, brake shoes, brake rods, brake applying cams, brake cable housing, bumpers and parts thereof, fenders, front axles, hub caps, body supporting springs, spring leaves, steering knuckles, steering knuckle arms, king pins, steering shaft arms, and wheel hubs. |
| 314,825 | GM | 012 | Internal-combustion engines and repair and replacement parts thereof-namely, cam-shafts, connecting rods, crank-shafts, crank shaft bearings, driving axle shafts, differntial driving mechanisms and parts thereof, manifolds, fans, fan pulleys, flywheels, pistons, piston pins, rocker arms, rocker supports, water pumps and parts thereof, valves, valve operating tappets, and valve springs; clutches and parts thereof-namely, clutch housings, clutch plates, clutch plate hubs, clutch operating levers, clutch pedals, clutch operating yokes; gears; transmission mechanism and parts thereof; transmission housings, transmission shafts; and universal joints and parts thereof. |
| 314,823 | GM | 007, 012, 017 | Brake linings, brake shoe facings, clutch plate facings, fan belts, gaskets, metallic tire covers, piston rings, and radiator connecting hose. |
| 1,714,390 | GM | 042 | Automobile and truck dealership services. |
| 1,685,062 | GM | 006 | Metal keys for locks. |

8

| | | | |
|---|---|---|---|
| 4,596,433 | GM | 009 | Motor vehicle diagnostic computer and parts thereof including memory cards; plug in electronic device for vehicle diagnostic testing; electronic data recorders for use with motor vehicle computer systems; computers, computer monitors, printers, modems, computer programs for reading, diagnosing and analyzing vehicle parts and vehicle system operations; vehicle based electronic modules for transmitting diagnostic information and vehicle operational status; electronic device to read engine emissions; software for motor vehicle diagnostic apparatus. |
| 1,474,088 | GM | 012 | Automobiles, motor trucks, truck tractors, buses, engines thereof and structural parts thereof. |
| 1,575,170 | GM | 028 | Toys and playthings; namely, toy vehicles, toy cars, toy model hobbycraft kits. |
| 1,476,220 | GM | 037 | Repair service for motor vehicles. |
| 1,927,415 | GM Restoration Parts | 006, 007, 009, 011, 012, 016, 027 | Name plates made of metal.<br><br>Connecting hoses for radiators, filters and pumps for land vehicle motors and engines.<br><br>Radio antennas, gauges and tachometers for land vehicles.<br><br>Lamps and dome and tail light lenses therefor.<br><br>Land vehicle parts, namely, fenders, hub caps, steering wheels, horns, battery trays, mirrors, |

9

|  |  |  | body panels, windshield wiper arms, grilles, air cleaner shrouds, fan shrouds, fan belts, exhaust manifolds. Decals. Floor mats made of rubber. |
|---|---|---|---|

7. The above U.S. registrations for the GM Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the GM Trademarks constitute *prima facie* evidence of their validity and of GM's exclusive right to use the GM Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed GM Trademarks are attached hereto as **Exhibit 1**.

8. The GM Trademarks are distinctive when applied to the GM Products, signifying to the purchaser that the products come from GM and are manufactured to GM's quality standards. Whether GM manufactures the products itself or contracts with others to do so, GM has ensured that products bearing the GM Trademarks are manufactured to the highest quality standards.

9. The GM Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been used by GM for many years. The innovative marketing and product designs of the GM Products have enabled the GM brand to achieve widespread recognition and fame and have made the GM Trademarks some of the most well-known marks in the industry. The widespread fame, outstanding reputation, and significant goodwill associated with the GM brand have made the GM Trademarks valuable assets of GM.

10. GM has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the GM Trademarks. In fact, GM has expended millions of dollars annually in advertising, promoting, and marketing featuring the GM Trademarks. GM

Products have also been the subject of extensive unsolicited publicity resulting from their high quality, performance, and innovative design. As a result, products bearing the GM Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GM. GM Products have become among the most popular of their kind in the U.S. and the world. The GM Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the GM Trademarks is of incalculable and inestimable value to GM.

11. GM Products are sold online via the GM.com website and through authorized dealers and licensees, including several in the Chicago area. Sales of GM Products via the GM.com website are significant. The GM.com website features proprietary content, images, and designs exclusive to the GM brand.

**The Defendants**

12. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

13. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their

counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

14. The success of the GM brand has resulted in significant counterfeiting of the GM Trademarks. Consequently, GM has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, GM has identified many fully interactive, e-commerce stores offering Counterfeit GM Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, Etsy, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id*.

15. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least

some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

16. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit GM Products to residents of Illinois.

17. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of Counterfeit GM Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. On information

and belief, Plaintiff has not licensed or authorized Defendants to use any of the GM Trademarks, and none of the Defendants are authorized retailers of genuine GM Products.

18. Many Defendants also deceive unknowing consumers by using one or more GM Trademarks without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for GM Products. Other e-commerce stores operating under Seller Aliases omit using GM Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for GM Products.

19. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

20. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit GM Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration

patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit GM Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit GM Products were manufactured by and come from a common source and that Defendants are interrelated.

22. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of GM's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to GM. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

24. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit GM Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from GM, have jointly and severally, knowingly and willfully used and continue to use the

GM Trademarks in connection with the advertisement, distribution, offering for sale, and sale of the Counterfeit GM Products into the United States and Illinois over the Internet.

25. Defendants' unauthorized use of the GM Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit GM Products, including the sale of Counterfeit GM Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming GM.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. GM hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered GM Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The GM Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from GM Products sold or marketed under the GM Trademarks.

28. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the GM Trademarks without GM's permission.

29. GM is the exclusive owner of the GM Trademarks. GM's United States Registrations for the GM Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of GM's rights in the GM Trademarks and are willfully infringing and intentionally using counterfeits of the GM Trademarks. Defendants' willful, intentional, and unauthorized use of the GM Trademarks is likely to cause and is causing

confusion, mistake, and deception as to the origin and quality of the Counterfeit GM Products among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. GM has no adequate remedy at law and, if Defendants' actions are not enjoined, GM will continue to suffer irreparable harm to its reputation and the goodwill of its well-known GM Trademarks.

32. The injuries and damages sustained by GM have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit GM Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. GM hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit GM Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with GM or the origin, sponsorship, or approval of Defendants' Counterfeit GM Products by GM.

35. By using the GM Trademarks in connection with the sale of Counterfeit GM Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit GM Products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit GM Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. GM has no adequate remedy at law and, if Defendants' actions are not enjoined, GM will continue to suffer irreparable harm to its reputation and the goodwill of its GM Trademarks and brand.

## PRAYER FOR RELIEF

WHEREFORE, GM prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

    a. using the GM Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a genuine GM Product or is not authorized by GM to be sold in connection with the GM Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any products as genuine GM Products or any other products produced by GM that are not GM's, or not produced under the authorization, control, or supervision of GM and approved by GM for sale under the GM Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit GM Products are those sold under the authorization, control, or supervision of GM, or are sponsored by, approved by, or otherwise connected with GM;

    d. further infringing the GM Trademarks and damaging GM's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or

inventory not manufactured by or for GM, nor authorized by GM to be sold or offered for sale, and which bear any of GM's trademarks, including the GM Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon GM's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, Etsy, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the GM Trademarks;

3) That Defendants account for and pay to GM all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the GM Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that GM be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the GM Trademarks;

5) That GM be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 8th day of May 2023.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Rachel S. Miller
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law
rmiller@gbc.law

*Attorneys for Plaintiff General Motors LLC*